*15*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

-vs-

D-1   ALI NASER MUAALLA and
D-2   SENA ALI MUAALLA,

Defendants.

_____/

Case:2:17-cr-20434
Judge: Drain, Gershwin A.
MJ: Stafford, Elizabeth A.
Filed: 06-27-2017 At 04:33 PM
INDI USA V ALI NASER MUAALLA, ET AL
(LG)

VIO:   18 U.S.C. § 371
7 U.S.C. § 2024(b)
42 U.S.C. § 1760(g)

# INDICTMENT

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

## The Federal Food Stamp Program

1. The federal Food Stamp Program is a program designed to raise the level of nutrition of low-income households. The Food Stamp Program is funded by the U.S. Department of Agriculture (USDA) and largely administered in Michigan by the USDA's Food and Nutrition Service (FNS) and the Michigan Department of Human Services (formerly known as the Michigan Family Independence Agency and now known as the Michigan Department of Health and Human Services). The

Food Stamp Program is governed by federal statutes and regulations. (In 2008, the Food Stamp Program was renamed the Supplemental Nutrition Assistance Program, or SNAP. Nevertheless, for purposes of clarity, the program will be referred to in this Indictment as the Food Stamp Program.)

2. Both low-income households and retail food stores must meet certain eligibility criteria before they can participate in the Food Stamp Program.

3. Eligible recipients of food stamp benefits may use those benefits solely for the purchase of eligible food items, which include any food or food products intended for consumption at home.

4. Eligible retail food stores may accept food stamp benefits only as payment for eligible food items. Such stores may not accept food stamp benefits in exchange for such ineligible items as alcoholic beverages, tobacco, and hot foods and hot food products prepared for immediate consumption. Nor may such stores accept food stamp benefits in exchange for cash. Nor may such stores accept food stamp benefits to pay down lines of credit or pay off loans.

5. To participate in the Food Stamp Program in Michigan, a store owner is required to complete, sign, and submit to the USDA's FNS an FSP Application for Stores (Form FNS-252). The application contains a certification, signed by the store owner, that states that violations of the Food Stamp Program regulations can lead to criminal prosecution and sets forth as examples of such violations, "Trading

- 2 -

cash for food stamp benefits," "Accepting food stamp benefits as payment for ineligible items," and "Accepting food stamp benefits as payment on credit accounts or loans." Earlier versions of Form FNS-252 contained the same warnings in slightly different language.

### The Federal WIC Program

6. The Special Supplemental Nutrition Program for Women, Infants, and Children, referred to as the WIC program, provides federal grants to States for supplemental foods, health care referrals, and nutrition education for low-income pregnant, breastfeeding, and non-breastfeeding postpartum women, and to infants and children up to age five who are found to be at nutritional risk. In Michigan, the WIC program is principally administered by the USDA's FNS and the Michigan Department of Community Health (now known as the Michigan Department of Health and Human Services). The WIC program is governed by federal statutes and regulations.

7. Both low-income households and retail food stores must meet certain eligibility criteria before they can participate in the WIC program.

8. Eligible recipients of WIC benefits may use those benefits solely for the purchase of eligible food items, which include such items as milk, breakfast cereal, cheese, eggs, fruits, and vegetables.

- 3 -

9. Eligible retail food stores may accept WIC benefits only as payment for eligible food items. Such stores may not accept WIC benefits in exchange for such ineligible items as alcoholic beverages, tobacco, and hot foods and hot food products prepared for immediate consumption. Nor may such stores accept WIC benefits in exchange for cash. Nor may such stores accept WIC benefits to pay down lines of credit or pay off loans.

10. To participate in the WIC Program in Michigan, a store owner is required to complete, sign, and submit to the Michigan Department of Community Health a WIC Vendor Application (Form DCH-0576) and then complete and sign a WIC Vendor Contract and Certification (Form DCH-0199), in which the vendor agrees to, among other things, "[n]ever give WIC client's cash in exchange for redeeming their food benefits, "[n]ever allow the sale of non-food items, alcohol, alcoholic beverages or tobacco products in exchange for food instruments," "[n]ever buy or sell food instruments for cash," and "[n]ever provide credit . . . for WIC authorized foods not obtained at the time of the transactions." The WIC Vendor Contract and Certification also contains a penalty provision stating that one who fraudulently obtains WIC funds is subject to criminal fines and imprisonment. Early versions of Form DCH-0199 contained the same warnings in slightly different language.

- 4 -

## The Issuance, Use, and Redemption of Food Stamp and WIC Benefits

11.  The Michigan Department of Human Services provides eligible food stamp beneficiaries with Electronic Benefit Transfer (EBT) cards, commonly referred to in Michigan as "Bridge" cards because the Mackinac Bridge is depicted on the face of the card.  The Michigan Department of Human Services also provides food stamp beneficiaries with personal identification numbers (PINs), which are to be used with the EBT cards.  Likewise, the Michigan Department of Community Health provides eligible WIC beneficiaries with EBT (Bridge) cards and PINs.

12.  The Michigan Department of Human Services issues a specific monthly dollar amount of food stamp benefits to food stamp beneficiaries, and the Michigan Department of Community Health issues a specific monthly dollar amount of WIC benefits to WIC beneficiaries.  These food stamp and WIC benefits are stored in a central computer database and are electronically accessed through the use of EBT cards and PINs.

13.  Through a third-party processor, the USDA's FNS provides eligible retail food stores with electronic terminals known as point-of-sale (POS) terminals.

14.  The purchase of eligible food items with food stamp benefits is accomplished in the following manner:  (a) the food stamp beneficiary selects eligible food items at a retail food store authorized to accept food stamps; (b) he or

she goes to the checkout lane; his or her EBT card is swiped through the POS terminal, which reads the magnetic strip on the back of the EBT card; he or she enters his or her PIN into the POS terminal; (c) the POS terminal communicates electronically with a central computer database located outside of the State of Michigan; (d) the central computer database then electronically informs the POS terminal that the purchase is either approved or disapproved based on the current balance of food stamp benefits in the beneficiary's account; (e) if the purchase is approved, the beneficiary leaves the store with his or her groceries and the central computer database deducts the purchase price from his or her food stamp account and credits the corresponding amount to the retail food store's designated bank account; and (f) at least once a day, the central computer database adds up the credits to the retail food store's account, and the U.S. Treasury transfers the total amount by wire to the designated bank account of the retail food store.

15. The purchase of eligible food items with WIC benefits is accomplished in the same way that eligible food items are purchased with food stamp benefits.

## Modern Save a Lot

16. Defendant ALI NASER MUAALLA owned and operated Modern Save a Lot, a convenience store that carried grocery items and other merchandise and was located at 13343 Michigan Avenue in Dearborn, Michigan. (The store's name in its articles of incorporation, which were filed in March 2006, was "Modern Save

Lots Dollar, Inc."). Defendant SENA ALI MUAALLA, the daughter of defendant Ali Naser Muaalla, helped to manage and operate the store. In 2006, Modern Save a Lot was authorized by the USDA's FNS to accept food stamp benefits from its customers, and in 2008, it was authorized by the Michigan Department of Community Health to accept WIC benefits from its customers.

17. The USDA's FNS, through a third-party processor, provided Modern Save a Lot with POS terminals to process the purchases of eligible food items with food stamp and WIC EBT cards.

18. At all times relevant to this Indictment, Modern Save a Lot maintained accounts at JPMorgan Chase Bank and other banks. Federal funds representing food stamp and WIC benefits redeemed at Modern Save a Lot were regularly transferred by wire from the U.S. Treasury to a Modern Save a Lot account at JPMorgan Chase Bank

## COUNT ONE
(18 U.S.C. § 371 – Conspiracy to Defraud the United States)

**D-1 ALI NASER MUAALLA**
**D-2 SENA ALI MUAALLA**

19. From no later than December 2006 through approximately November 2013, the exact dates being unknown, in the Eastern District of Michigan, Southern Division, **ALI NASER MUAALLA** and **SENA ALI MUAALLA**, defendants herein, and

others known and unknown to the grand jury, did knowingly agree and conspire to defraud a department of the United States, namely, the U.S. Department of Agriculture, and did thereby impair, obstruct, and defeat by dishonest means the lawful functions of the U.S. Department of Agriculture in connection with its administration of the Food Stamp Program and the WIC program.

### Manner and Means of the Conspiracy

20.  It was a part of the conspiracy that ALI NASER MUAALLA and others acting at his direction, including SENA ALI MUAALLA, would accept and redeem food stamp benefits and WIC benefits from Modern Save a Lot's customers and in exchange (1) give them cash, at a discounted rate, (2) give them items that may not be purchased with food stamp or WIC benefits, or (3) treat them as payments on lines of credit extended by Modern Save a Lot.  These practices resulted in an instant profit for Modern Save a Lot.  As ALI NASER MUAALLA and SENA ALI MUAALLA knew, these practices were contrary to and violated federal law.

21.  It was also a part of the conspiracy that ALI NASER MUAALLA and others acting at his direction would swipe the food stamp and WIC EBT cards of the store's customers through a POS terminal at Modern Save a Lot, and that the corresponding PINs would be entered into the POS terminals as if the customers were purchasing eligible food items when in fact the customers were providing their food stamp and/or WIC benefits (1) in exchange for cash, (2) in exchange for

- 8 -

items that may not be purchased with food stamp or WIC benefits, and/or (3) to make payments on lines of credit extended by Modern Save a Lot. The POS terminals would then communicate by wire with a central computer database located outside of the State of Michigan, which would approve the purchases/ transactions.

22. It was also a part of the conspiracy that ALI NASER MUAALLA and others acting at his direction, including SENA ALI MUAALLA, would purchase food stamp and/or WIC EBT cards from the store's customers with cash, at a discounted rate, and then use those EBT cards to purchase goods at other retail food stores authorized to accept food stamp and WIC benefits, such as Meijer and Kroger.

23. It was also a part of the conspiracy that federal funds representing food stamp and WIC benefits accepted and redeemed at Modern Save a Lot would be transferred by wire from the U.S. Treasury to an account of Modern Save a Lot at JPMorgan Chase Bank.

24. It was also a part of the conspiracy that Modern Save a Lot, ALI NASER MUAALLA, and SENA ALI MUAALLA would financially benefit from the conspiracy.

## Overt Acts

25. On or about December 20, 2006, ALI NASER MUAALLA, for the purpose of advancing and furthering the conspiracy, did accept and redeem at Modern Save a Lot approximately $30.00 in food stamp benefits from a customer and in return

provided the customer with $20.00 in cash and items that may not be purchased with food stamp benefits.

26.  On or about July 9, 2008, ALI NASER MUAALLA, for the purpose of advancing and furthering the conspiracy, did accept and redeem at Modern Save a Lot approximately $45.00 in food stamp benefits from a customer and in return provided the customer with $20.00 in cash and items that may not be purchased with food stamp benefits.

27.  On or about January 7, 2010, SENA ALI MUAALLA, for the purpose of advancing and furthering the conspiracy, did accept and redeem at Modern Save a Lot approximately $83.00 in food stamp and WIC benefits from a customer and in return provided the customer with $20.00 in cash and items that may not be purchased with food stamp or WIC benefits.

28.  On or about June 13, 2011, ALI NASER MUAALLA, for the purpose of advancing and furthering the conspiracy, did accept and redeem at Modern Save a Lot approximately $145.00 in food stamp benefits from a customer and in return provided the customer with $60.00 in cash.

29.  On or about July 5, 2011, ALI NASER MUAALLA, for the purpose of advancing and furthering the conspiracy, did accept and redeem at Modern Save a Lot approximately $200.00 in food stamp benefits from a customer and in return provided the customer with $110.00 in cash.

30. On or about July 6, 2011, ALI NASER MUAALLA, for the purpose of advancing and furthering the conspiracy, did purchase items at a Meijer store in Allen Park, Michigan, with a food stamp EBT card that had been purchased with cash from a customer at Modern Save a Lot.

31. On or about July 23, 2011, SENA ALI MUAALLA, for the purpose of advancing and furthering the conspiracy, did purchase items at a Meijer store in Allen Park, Michigan, with a food stamp EBT card that had been purchased with cash from a customer at Modern Save a Lot.

32. On or about January 24, 2013, SENA ALI MUAALLA, for the purpose of advancing and furthering the conspiracy, did accept and redeem at Modern Save a Lot approximately $80.00 in WIC benefits from a customer and in return provided the customer with $90.00 in cash.

33. On or about May 8, 2013, ALI NASER MUAALLA, for the purpose of advancing and furthering the conspiracy, did accept and redeem at Modern Save a Lot approximately $240.00 in food stamp and WIC benefits from a customer and in return provided the customer with $20.00 in cash and items that may not be purchased with food stamp or WIC benefits.

34. On or about June 12, 2013, ALI NASER MUAALLA, for the purpose of advancing and furthering the conspiracy, did accept and redeem at Modern Save a Lot approximately $310.00 in food stamp and WIC benefits from a customer and

in return provided the customer with $50.00 in cash and items that may not be purchased with food stamp or WIC benefits.

35. On or about July 16, 2013, ALI NASER MUAALLA, for the purpose of advancing and furthering the conspiracy, did accept and redeem at Modern Save a Lot approximately $400.00 in food stamp and WIC benefits from a customer and in return provided the customer with $25.00 in cash and items that may not be purchased with food stamp or WIC benefits.

36. On or about July 25, 2013, ALI NASER MUAALLA, for the purpose of advancing and furthering the conspiracy, did accept and redeem at Modern Save a Lot approximately $315.00 in food stamp and WIC benefits from a customer and in return provided the customer with $50.00 in cash, a $100 Modern Save a Lot check payable to cash, and items that may not be purchased with food stamp or WIC benefits.

All in violation of Section 371 of Title 18 of the United States Code.

## COUNT TWO
(7 U.S.C. § 2024(b) – Food Stamp Fraud)

**D-1 ALI NASER MUAALLA**
**D-2 SENA ALI MUAALLA**

37. From no later than December 2006 through approximately November 2013, the exact dates being unknown, in the Eastern District of Michigan, Southern

- 12 -

Division, **ALI NASER MUAALLA** and **SENA ALI MUAALLA**, defendants herein, did knowingly acquire and use food stamp benefits having a value of over $5,000.00 in a manner contrary to federal law, in violation of Section 2024(b) of Title 7 of the United States Code.

## COUNT THREE
(42 U.S.C. § 1760(g) – WIC Fraud)

**D-1  ALI NASER MUAALLA**
**D-2  SENA ALI MUAALLA**

38. From no later than January 2010 through approximately November 2013, the exact dates being unknown, in the Eastern District of Michigan, Southern Division, **ALI NASER MUAALLA** and **SENA ALI MUAALLA**, defendants herein, did willfully obtain by fraud WIC benefits having a value of over $100.00 and did retain such funds for personal use and gain, knowing that such benefits had been

- 13 -

obtained by fraud, in violation of 1760(g) of Title 42 of the United States Code.

THIS IS A TRUE BILL.

 s /Grand Jury Foreperson
*Grand Jury Foreperson*


DANIEL L. LEMISCH
*Acting United States Attorney*

 s/John K. Neal
JOHN K. NEAL
*Assistant United States Attorney*
Chief, White Collar Crime Unit

 s/Stephen L. Hiyama
STEPHEN L. HIYAMA
*Assistant United States Attorney*
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3220
phone:  313-226-9674
e-mail:  stephen.hiyama@usdoj.gov
bar no.:  P32236


Date:  June 27, 2017



| United States District Court<br>Eastern District of Michigan | **Criminal Case** | Case:2:17-cr-20434<br>Judge: Drain, Gershwin A.<br>MJ: Stafford, Elizabeth A.<br>Filed: 06-27-2017 At 04:33 PM<br>INDI USA V ALI NASER MUAALLA, ET AL<br>(LG) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form

| **Companion Case Information** | **Companion Case Number:** 16-CR-20324 |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** Hood |
| ☒ Yes ☐ No | **AUSA's Initials:** |

**Case Title:** USA v. ALI NASER MUAALLA et al.

**County where offense occurred :** WAYNE

**Check One:** ☒ Felony ☐ Misdemeanor ☐ Petty

_____Indictment/_____Information --- **no** prior complaint.

✓ Indictment/_____Information --- based upon prior complaint [Case number: 14-MJ-30143 ]

_____Indictment/_____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____ **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

June 27, 2017
Date

Stephen L. Hiyama
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone:
Fax:
E-Mail address:
Attorney Bar #:

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.